# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| **TITAN TIRE CORPORATION OF FREEPORT,** | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-cv-50072 |
| | ) | |
| **UNITED STEELWORKERS OF AMERICA, LOCAL 745L,** | ) | |
| | ) | |
| | ) | Magistrate P. Michael Mahoney |
| Defendant-Counterplaintiff. | ) | Judge Presiding |

## MEMORANDUM OF LAW BY
## DEFENDANT-COUNTERPLAINTIFF USW 745L
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

The parties in this case have a collective bargaining agreement, and that agreement contains

a grievance procedure for the resolution of disputes.  The grievance procedure culminates in final

and binding arbitration before an arbitrator selected by the parties.  The Employer has refused to

honor an arbitration award rendered pursuant to this procedure.

As the court is undoubtedly aware, the federal courts have no authority to review the merits

of an arbitration award.  Instead, if the arbitrator has been honest and he or she has decided the issues

submitted by the parties, the resulting labor arbitration award may only be overturned if it is not

based upon a construction of the contract.  In the instant case, the Employer does not contend that

the arbitrator has been dishonest or that she decided an issue not submitted to her by the parties.

Further, even a superficial review of the award easily demonstrates that it is firmly based upon the applicable collective bargaining agreements between the parties.  Accordingly, the Court should issue an order enforcing the award.

## II.     ARGUMENT

### A.     Summary of the Arbitrator's Decision

This case involves an arbitration award regarding the employer's obligation to pay medical benefits to an employee who was severely injured while working in a side job.  The arbitrator examined the documents that bear on this issue in exacting detail, and she decided that the employer had an obligation to pay these benefits.  What follows is a brief summary of her  decision.

The members of the Union make tires at a plant located in Freeport, Illinois.  Until 2006, the plant was owned by Goodyear Tire and Rubber. Titan Tire bought the plant from Goodyear at the beginning of 2006.

At the time of the sale, Titan and the Union negotiated a new labor agreement (the "Agreement").  The Agreement is Exhibit 1 to the Motion to Vacate.  This contract incorporates the terms of a separate Benefits Agreement, which is Exhibit 2 to the Motion to Vacate.  The Benefits Agreement has several parts.

The grievant, Mr. Kip Kuhlemeier, is an electrician.  In addition to his job at Titan, Mr. Kuhlemeier works side jobs with a partner and splits the profits from his partnership annually. Under Illinois law, this type of partnership does not have to carry workers compensation insurance. Mr. Kuhlemeier and his partner did not purchase such insurance.  On August 28, 2007, Mr. Kuhlemeiere was seriously injured in an accident at his second job.  This injury meant that

Mr. Kuhlemeier's left leg had to be amputated. Titan has refused to pay the medical bills for the treatment for the injury. Titan maintains that it did not have to pay these bills because Mr. Kuhlemeir's partnership could have elected to provide workers compensation insurance under Illinois law and did not.

In the grievance, the Union relied on the provisions of Exhibit B to the Benefits Agreement. Part 2(d) of that agreement provides an exclusion if an employee or his dependent "is entitled to receive reimbursement under any Workers Compensation Laws." The reasoning of the grievance was that since Mr. Kuhlemeier was not entitled to such benefits (having opted out of coverage), he cannot be excluded from receiving benefits under the medical insurance plan.

For its part, the Company relies on language contained in a "Plan Document." The cited provision of the Plan Document contains an exclusion that covers any employee entitled to benefits under the workers compensation laws or any employee that voluntarily elected not to secure such coverage.

The arbitrator agreed that the language cited by the Union controlled the case. She held that the exclusionary language of the Benefits Agreement did not apply, since Mr. Kuhlemeier was not entitled to receive workers compensation benefits. She rejected the Company's reliance on the broader exclusionary language in the Plan Document for two reasons. First, the Plan Document had never been agreed to by the Union or distributed to the employees. This was important because the language of the Plan Document was more expansive than the language in the prior analogous Goodyear document, and employees were entitled to fair notice of any change in the coverage of their medical plan. Second, she held that the Plan Document was subordinate to the terms of the

collective bargaining agreement and the Benefits Agreement. Accordingly she sustained the grievance.

**B.** **The Federal Courts Have Very Limited Authority to Review Arbitrators' Decisions.**

It is the national policy to encourage the arbitration of disputes arising under collective bargaining agreements. The Labor Management Relations Act declares: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. Section 173(d).

For arbitration to be an effective way to resolve industrial disputes, it must be final. Accordingly, the federal courts have very limited authority to review arbitration awards. If an arbitrator acts within the scope of the authority granted to him by the parties, and if there is no dishonesty involved, the courts must uphold the fact-finding of the arbitrator. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001); United Paperworkers International Union v. Misco, 484 U.S. 29, 36, 37-38 (1987); Jasper Cabinet Co. v. United Steelworkers of America, 77 F.3d 1025, 1028 (7th Cir. 1996); Chrysler Motor Corp. v International Union, Allied Indus. Workers, 959 F.2d 685, 689, n.4 (7th Cir. 1992). In addition, if the arbitrator bases his decision upon the contract, a court has no authority to overturn that decision even if it believes a serious error has occurred. Eastern Associated Coal Corp., v. United Mine Workers of America, District 17, 531 U.S. 57, 62 (2000). So long as the award is based upon the contract, and not some other body of law, policy, or feeling, the courts should uphold the arbitrator's decision. Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 184-85 (7th Cir. 1985). If the decision is a

rational interpretation of the provisions of the contract, it should be enforced.  Amoco Oil Co. v. Oil, Chem. & Atomic Wkrs, etc., 548 F.2d 1288, 1294 (7th Cir. 1977); Ludwig Honold Manufacturing Co. v. Fletcher, 405 F.2d 1123, 1128  (3d Cir. 1969).

The arbitrator has the power to bring many sources of precedent to his or her interpretation of the contract.

> The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished.  For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs.  The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance because he cannot be similarly informed.

Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union, 821 F.2d 390, 396 (7th Cir. 1987) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960)).

The court should resolve any reasonable doubt in favor of upholding the award.  Sullivan v. Lemoncello, 36 F.3d 676, 683 (7th Cir. 1994).  Put another way, this means that the court should enforce the arbitration award even if the court believes the arbitrator wrongly interpreted the contract.  The test for whether an award "draws its essence from the agreement" is thus not based on substantive reasonableness – and it may in fact be unsound – but it is whether the interpretation is based on the contract.  See Ethyl Corp. v. United Steelworkers of America, supra, 768 F.2d at 184.

> Indeed, "so long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute . . . . In such cases, judicial review is limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement."

Id. at 186 (citations omitted).  Thus, it is the arbitrator who is "behind the driver's wheel of interpretation," and the court will vacate the award only if there is no possible interpretive route to the award.  Dexter Axle Co. v. Int'l Ass'n of Machinists & Aero. Workers, 418 F.3d 762, 767-68 (7th Cir. 2005).

### C.     The Arbitrator's Decision in this Case Should be Enforced.

The arbitrator's decision in this case was clearly based upon the agreements between the parties and the other applicable documents regarding the provision of medical insurance.  Indeed, a careful review of her decision and the documents involved shows that her decision is the best reading of those documents.

The key to the arbitrator's decision is her reliance on Exhibit B-1 of the Benefits Agreement. She carefully analyzed three provisions in Exhibit B-1 and concluded that those provisions, construed as a whole, meant that an employee could be excluded from medical benefits only if he or she was legally entitled to receive workers compensation benefits for the same injury.  She then held that Mr. Kuhlemeier was not legally entitled to receive workers compensation benefits because he had decided, in accordance with state law, to forego purchasing workers compensation insurance. Arb. Dec., p. 17-18.

Titan does not quarrel with this analysis of the provisions of Exhibit B-1.  It cannot, because the arbitrator's construction of the applicable provisions of Exhibit B-1 is a logical and rational

-6-

interpretation of those provisions. Instead, Titan relies on the much broader exclusionary language contained in the "Plan Document." Despite the fact that the parties agreed that the Plan Document could not override the provisions of the parties' collective bargaining agreement, Titan contends that the broader language of the Plan Document was incorporated by reference into the Benefits Agreement and that this incorporation by reference somehow is entitled to more weight than the explicit provisions of Exhibit B-1.

Titan's argument is specious. Assuming, *arguendo*, that there is a contradiction between the provisions of Exhibit B-1 of the Benefits Agreement and the later provisions of the Benefits Agreement which arguably incorporate the Plan Document, the arbitrator was hired to resolve such conflicts. The parties agreed to use an arbitrator to do so, and she did so based upon her reading of the history, language, and purposes of those provisions. Since her resolution of this alleged conflict was based upon these legitimate tools of contract interpretation and construction, Titan has no basis to ask a court to overrule her.

There is more. The arbitrator engaged in a careful analysis of the alleged conflict between the provisions of Exhibit B-1 of the Benefits Agreement and the provisions of the Plan Document and concluded that Exhibit B-1 created a binding contractual obligation. Her conclusion had two bases. First, she found that the Company had never notified the employees of the language in the Plan Document. In this vein, she rejected the argument that the Company gave sufficient notice to the Union because she found that Company representatives had assured the Union that the language in the Plan Document was not meant to change the policies that Goodyear had followed which provided insurance benefits to employees injured at their side jobs.

Second, she found the Company's argument regarding the language of the relevant documents implausible. Titan relied on language from the cafeteria benefit plan that indicated that the Summary Plan Descriptions were incorporated into the Benefits Agreement. The arbitrator assumed that this language referred to the "Plan Document" prepared by the Company after the parties agreed to the Benefits Agreement. Making this assumption, she quite properly found that it was wrong to assume that the parties meant to narrow the scope of the coverage of the Benefits Agreement by this reference in the cafeteria plan. Accordingly, she rejected the Company's argument.

In sum, review of the arbitrator's decision reveals that she carefully considered the company's contractual arguments and rejected them for rational reasons that are firmly rooted in traditional cannons of contract construction. This court should heed the words of the seminal case of <u>United Steelworkers of A. v. Enterprise W. & C. Corp.</u>, 363 U.S. 591 (1960), in which the U.S. Supreme Court emphasized that the arbitrator's construction of the provisions of a collective bargaining agreement was final. It held:

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.

<u>Id</u>. at 599.

Those words apply exactly to this case. There is nothing to indicate that the arbitrator did anything except construe the terms of the contract. The court should therefore uphold his award.

**III.    CONCLUSION**

For the reasons stated herein, the Court should grant summary judgment to the Union and order the enforcement of the arbitration award in this case.


Respectfully submitted,

CORNFIELD AND FELDMAN


By:    /s/ Stephen A. Yokich_____
Stephen A. Yokich
Attorney Bar Number 6181707

Attorneys for Defendant-Counterplaintiff United Steel Workers, Local 745L

Dated:  June 17, 2008

CORNFIELD AND FELDMAN
Suite 1400
25 East Washington Street
Chicago, IL 60602-1803
(312) 236-7800
(312) 236-6686 (fax)

## <u>CERTIFICATE OF SERVICE</u>

Stephen A. Yokich, an attorney, hereby certifies that on June 17, 2008, he caused the foregoing **Memorandum of Law by Defendant-Counterplaintiff USW 745l in Support of Motion for Summary Judgment** to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Michael R. Lied, Esq.
> HOWARD & HOWARD
> One Technology Plaza, Suite 600
> 211 Fulton Street
> Peoria, IL   61602-1350

and further certifies that on June 17, 2008, he caused the same document to be served upon the following non-registered participants by U.S. Mail, first-class postage prepaid and addressed as shown below:

> None

/s/ Stephen A. Yokich
Stephen A. Yokich