IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **TITAN TIRE CORPORATION OF FREEPORT,** | ) ) ) |
| Plaintiff-Counterdefendant, | ) ) |
| v. | ) Case No. 3:08-cv-50072 ) |
| **UNITED STEELWORKERS OF AMERICA, LOCAL 745L**, | ) ) ) |
| | ) Magistrate P. Michael Mahoney |
| Defendant-Counterplaintiff. | ) Judge Presiding |

**DEFENDANT-COUNTERPLAINTIFF'S RULE 56.1
STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.   INTRODUCTION**

Under the controlling case law, this Court has no authority to review the fact-finding of the arbitrator. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001); United Paperworkers International Union v. Misco, 464 U.S. 29, 36, 37-38 (1987); Jasper Cabinet Co. v. United Steelworkers of America, 77 F.3d 1025, 1028 (7th Cir. 1996). Thus, the following statements of fact are taken from the pleadings and the arbitrator's award in this case.

**II.   STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. The Employer in this case is Titan Tire Corporation. Titan Tire is an Illinois corporation with its principal place of business in Freeport, Illinois. Motion to Vacate and Answer, Para. 1.

2. Titan Tire operates a manufacturing facility in Freeport, Illinois. At that facility it constructs agricultural and other off-road tires. Id.

3. Titan Tire purchased the facility from Goodyear Tire and Rubber Company on January 1, 2006. Arb. Dec., p. 2.

4. The Union in this case is Local 745L of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). Local 745L is located in Freeport, Illinois. The USW is an international labor organization that operates throughout the United States and Canada. Counterclaim and Answer, Para. 1.

5. The USW, Local 745L, and Titan Tire are parties to a collective bargaining agreement which was effective on January 1, 2006, and expires in November 2010. Counterclaim and Answer, Para. 3; Motion to Vacate, Exh. 1.

6. The grievant in this case is Kip Kuhlemeier. Kuhlemeier has been an electrician at the plant since 1996. Arb. Dec., p. 2.

7. In addition to his work at Titan, Kuhlemeier maintains a side business in electrical repair named IMR. He operates the business with one colleague, has no other employees, and splits the profits with the colleague annually. Under the law of the State of Illinois, this type of partnership may purchase workers compensation insurance, but does not have to. Kuhlemeier and his partner decided not to purchase workers compensation insurance. Arb. Dec., p. 2.

8. On August 28, 2007, Kuhlemeier was seriously injured while working a side job. The injury resulted in the amputation of his left leg above the knee. During his hospital stay, administrators of the Titan insurance plan informed him that he was excluded from health insurance coverage by the Titan plan. Arb. Dec., p. 2.

9. On September 5, 2007, the Union filed a timely grievance to protest this exclusion from the insurance benefits. This grievance was heard in arbitration on December 13, 2007, and a decision sustaining the grievance was rendered on January 24, 2008.

10. The collective bargaining agreement between the parties provides the following with respect to health benefits:

> Section 7—Effect of Agreement
>
> The parties have entered into this Collective Bargaining Agreement, a Benefits Agreement and a Supplemental Unemployment Benefits Plan ("Agreements"). Those agreements shall constitute the sole and entire Agreement between the parties and supercedes all prior agreements.

Titan Complaint, Exhibit 1, p. 76.

11. The introduction to Exhibit B of the Benefits Agreement provides for a program of medical insurance "with the exception that" none of the benefits of the insurance "shall be applicable in the event of accident or sickness covered by a Worker's Compensation Act or similar legislation." Titan Complaint, Exhibit 2, p. 31.

12. Exhibit B of the Benefits Agreement between the two parties also contains the following additional exclusion language with respect to workers compensation benefits:

> No benefit shall be payable to an Employee or his Dependent if he is entitled to receive reimbursement under any Workers' Compensation Laws or is entitled to benefits from any municipal, state, federal or other governmental program of any sort.

Titan Complaint, Exhibit 2, p. 34.

13. The Exhibit B of the Benefits Agreement also contains a subrogation clause that allows the Company to recover payments made to the employees by a third party for covered medical expenses. Titan Complaint, Exhibit 2, p. 45.

14. As set forth above, the plant in Freeport was owned by Goodyear before it was owned by Titan. While it was owned by Goodyear, at least three employees sustained injuries while working side jobs, and the medical expenses of those injuries were paid by the health insurance plan of the Company. Arb. Dec., pp. 9-10, 11.

15. At the time of Mr. Kuhlemeier's injury, the Company printed and gave to the Union a "Plan Document" regarding its medical benefits. In the section entitled "General Limitations," the "Plan Document" sets forth an exclusion that excludes medical expenses in situations where an individual "fails to secure" workers compensation coverage or "voluntarily elects not to secure such coverage." Titan Complaint, Exhibit 4, p. 30.

16. The "Plan Document" states that "Language in the Collective Bargaining Agreement supercedes the Provisions of this Plan." Titan Complaint, Exhibit 4, p.4.

17. Exhibit D to the Benefits Agreement establishes a cafeteria plan for certain employee benefits. Article II of Exhibit D provides that it applies to employees as specified "in the eligibility provisions of the applicable plan in the respective Benefits Agreement between the Company and the collective bargaining representative and/or Summary Plan Description." Titan Complaint, Exhibit 4, p. 60.

18. Article IV of Exhibit D sets forth the relationship between the main portions of the Benefits Agreement and the cafeteria plan. It provides that the "provisions of this Article IV regarding Benefits Plans covered by a separate document are intended only as a descriptive

summary, and in the case of any conflict between the Plan and a separately documented Benefit Plan, the latter shall control." Titan Complaint, Exhibit 4, p. 62.

19. With respect to medical benefits, Article IV of Exhibit D provides that specific "coverage and exclusions can be found in the most current Benefits agreement and/or Summary Plan Description for the option selected, and are incorporated herein by reference." Titan Complaint, Exhibit 4, p. 62.

20. After the plant was sold by Goodyear to Titan, representatives of the parties met regarding a Plan Document to describe employee medical benefits. These discussions resulted in some changes to the Plan Document, and an agreement that the collective bargaining agreement and the Benefits Agreement would control over provisions of the Plan Document. Arbitrator's Dec., p. 10.

21. The parties specifically discussed the language in the Plan Document regarding the exclusion for employees who were not covered by workers compensation insurance and were injured in side jobs. In those discussions company representatives assured union officials that even though the wording in the Titan Plan Document was different from the wording in the Goodyear plan, the practice regarding the administration of benefits would remain the same. Arb. Dec., p.11, 12.

22. These discussions took place in the latter part of 2006. At some point during this time, the Employer transmitted a proposed final version of the Plan Document. The Union did not

respond to this proposal. It never distributed the Plan Document to the employees at the plant. Arb. Dec., p.12-13.

                    Respectfully submitted,

                    CORNFIELD AND FELDMAN

                    By:   /s/ Stephen A. Yokich
                           Stephen A. Yokich
                           Attorney Bar Number 6181707

                    Attorneys for Defendant United Steel Workers, Local 745L

Dated: June 17, 2008

CORNFIELD AND FELDMAN
Suite 1400
25 East Washington Street
Chicago, IL 60602-1803
(312) 236-7800
(312) 236-6686 (fax)

## CERTIFICATE OF SERVICE

Stephen A. Yokich, an attorney, hereby certifies that on June 17, 2008, he caused the foregoing **Defendant-Counterplaintiff's Rule 56.1 Statement of Undisputed Material Facts** to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Michael R. Lied, Esq.
> HOWARD & HOWARD
> One Technology Plaza, Suite 600
> 211 Fulton Street
> Peoria, IL  61602-1350

and further certifies that on June 17, 2008, he caused the same document to be served upon the following non-registered participants by U.S. Mail, first-class postage prepaid and addressed as shown below:

> None

/s/ Stephen A. Yokich
Stephen A. Yokich